IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROY STEGELMEIER, personal representative of the Estate of Trudy Stegelmeier, <br><br> Plaintiff, <br><br><br><br> vs. <br><br><br> DOUG ANDRUS DISTRIBUTING EMPLOYEE HEALTH BENEFIT PLAN, et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT <br><br><br><br><br><br> Case No. 2:02-CV-238 TS |

This matter is before the Court on cross-motions for Summary Judgment.  The court having considered the Motions, the memoranda, and supporting materials finds that there are no issues of material fact and, therefore, based on the undisputed facts of this case, concludes as follows:

## I. INTRODUCTION

Plaintiff brings this suit under ERISA and HIPAA[1] to recover benefits for surgery and hospitalization costs incurred by his wife.  The Plan Administrator denied the claims, finding

---

[1] Employee Retirement Income Security Act of 1974 (ERISA) and Health Insurance Portability and Accountability Act of 1996 (HIPAA).

1

that the wife's prior insurance coverage is not "creditable coverage" under the Plan, thereby disqualifying the claims under the Plan's pre-existing conditions limitation.  The two issues before this Court are whether Plaintiff is entitled to the claimed benefits under the terms of the Plan and whether a statutory penalty should be imposed against the Plan Administrator for failure to comply with Plaintiff's requests for Plan documents.  Reviewing the Plan Administrator's Decision under the arbitrary and capricious standard, this Court will uphold the decision to deny the claims, but will impose a statutory penalty against the Plan Administrator in the amount of $17,550.  Each party will bear their own costs.

## II.  PROCEDURAL BACKGROUND

Previously, this Court denied Plaintiff's Motion for Summary Judgment and remanded the case to the Plan Administrator for reconsideration of the claims and for compliance with ERISA's notice requirements.[2]

On remand, the Plan Administrator again denied the claims on the grounds that the wife's prior insurance coverage does not qualify as "creditable coverage" under the Plan, thereby disqualifying the claims under the Plan's pre-existing conditions limitation. Subsequent to the adverse determination, the case was re-opened and the parties filed the present motions.

## III.  UNDISPUTED FACTS

*The Plaintiff*

Plaintiff Roy Stegemeier (Stegelmeier) was the husband of Trudy Stegelmeier and is the personal representative of her estate.  Stegelmeier was employed by Doug Andrus

---

[2] *Stegelmeier v. Doug Andrus Distrib. Inc.*, No. 2:02-CV-238 TS, 2004 WL 736831, at *29 (D. Utah Jan. 12, 2004).

Distributing, Inc., and he and his dependants were participants and beneficiaries in the Doug Andrus Distributing Benefit Plan (the Plan).  On December 10, 1998, Stegelmeier completed the paperwork to enroll his wife Trudy, and she became a Plan beneficiary on January 1, 1999.

*The Plan*

The Plan is a group medical benefits plan sponsored by Doug Andrus Distributing, Inc. for its employees and their beneficiaries.  The Plan is also an employee welfare benefit plan under ERISA.[3]  Both employer and employee contributions fund the Plan.

The Plan and the Summary Plan Description (SPD) were available for inspection at the company's office, and copies of the Plan and the SPD were distributed to Stegelmeier within a short time after he started work for the company.

Under the Plan, coverage was provided for medically necessary inpatient care. However, there was a Pre-Existing Conditions Limitation for new enrollees, which states:

> Covered charges incurred under Medical Benefits for Pre-Existing Conditions are not payable unless incurred 12 consecutive months, or 18 months if a Late Enrollee after the person's Enrollment Date. This time may be offset if the Employee has <u>creditable coverage</u> from his or her previous plan.[4]

The Plan defines a Pre-Existing Condition as follows:

> A Pre-Existing Condition is a condition for which medical advice, diagnosis, care of treatment was recommended or received within six months of the person's Enrollment Date under this Plan.[5]

---

[3] 29 U.S.C.  1002(1) (2006).

[4] Ex. A (underlined emphasis added).

[5] *Id.*

Under the terms of the Plan, the employer had the responsibility to assist participants and beneficiaries in obtaining and/or verifying prior coverage as follows:

PRE-EXISTING CONDITIONS

NOTE: The length of the Pre-Existing Condition Limitation may be reduced or eliminated if any eligible person has creditable coverage from another health plan. An eligible person may request a certificate of creditable coverage from his or her prior plan and the Employer will assist any eligible person in obtaining a certificate of creditable coverage from a prior plan.

If, after creditable coverage has been taken into account, there will still be a Pre-Existing Conditions Limitation imposed on an individual, that individual will be so notified.[6]

Without accounting for a creditable coverage reduction, the pre-existing conditions limitation would no longer bar coverage for Trudy Stegelmeier's pre-existing conditions after January 1, 2000.

*The Plan Administrator and EBMS*

Heber Andrus is the Plan Administrator and the named fiduciary for the Plan. Employee Benefit Management Services, Inc.  (EBMS) is the third-party administrator for the Plan.

The Plan documents bestow upon the Plan Administrator the following relevant authority and duties:

The Plan Administrator shall administer this Plan in accordance with its terms and establish its policies, interpretations, practices, and procedures. It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which related to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. The decisions of the Plan Administrator will be final and binding on all interested parties.

---

[6] *Id.*

4

DUTIES OF THE PLAN ADMINISTRATOR.

. . . .

(9) To delegate to any person or entity such powers, duties and responsibilities.[7]

The Plan has an administrative service agreement with EBMS, which provides that

EBMS will perform the following administrative services for the Plan sponsor:

(b)   Process and adjudicate all claims presented for payment, including but not limited to reasonable investigatory work in determining claim eligibility, and preparing and distributing benefit checks or drafts to employees and/or service providers.

. . . .

(d)   Respond to inquires from . . . Plan Members and service providers concerning requirement procedures or benefits of the Plan, though such information shall not constitute a determination of benefits that will be paid under the Plan or a guarantee or certification to anyone that any amount will be paid.

*Trudy Stegelemeier's Prior Insurance Policies*

Prior to enrolling in the Doug Andrus Distributing benefit Plan, Trudy had two

policies of insurance with Combined Insurance Company of America (Combined).  The first

policy was a "Sickness Income Policy," which provided reimbursement for lost time during

sickness, with increased benefits during a period of hospitalization, if the insured is

disabled. The second policy was a "Sickness Hospital Indemnity Policy," which provided,

in addition to disability benefits, a set benefit during a period of hospitalization, without

regard to disability.[8]

---

[7] *Id.* (underlined emphasis added).

[8] Ex. B.

The two Combined policies became effective on October 16, 1997, and December 8, 1997, respectively.  Both policies were in effect through the date of Trudy's death.

The Combined policies provide differing coverage.  Section E of the second policy provides as follows:

> SECTION E        ADDITIONAL HOSPITAL EXPENSE – SICKNESS
>
> If, because of a covered sickness and beginning while this policy is in force, you are confined in a hospital overnight as an inpatient, Combined will pay you, in addition to any other benefit payable under this policy, the hospital expenses you incur up to . . . $200.00 for each period of such hospital confinement.
>
>             . . . .
>
> SUCCESSIVE PERIODS OF HOSPITAL CONFINEMENT
>
> Successive periods of hospital confinement for the same or related sickness will be considered on continuous confinement unless separated by more than 30 days.[9]

Following Trudy's death, Combined made payment in the amount of $5,531.00 under Trudy's policies of insurance for "hospital confinement, intensive care unit, and hospital incidentals."  Of the amount paid by Combined, $200 was under Section E as hospital incidentals.[10]

*Trudy's Medical Treatment and Pre-treatment Communications*

Trudy had a variety of serious health problems. In the summer of 1999, her physician, Dr. Goodman, recommended surgery.  He requested pre-authorization from EBMS for the procedure on August 10, 1999.  On September 3, 1999, EBMS responded

---

[9] *Id.*

[10] *Id.*

affirmatively to the pre-authorization request.  However, the September 3, 1999 pre-authorization expressly provided that the pre-authorization was "based on the information provided by the Doctor's office" and that the procedures "would [only] be considered an eligible expense subject to Plan provisions, UCR and eligibility at the time charges are incurred."[11]  It further provided that the pre-authorization was "not a guarantee of benefits" and that "[c]harges are subject to eligibility and Plan provisions at the time charges are incurred."[12]

Approximately one month to six weeks prior to the October 1999 surgery, Carisa, from Dr. Goodman's office, called EBMS to verify benefits.  Carisa and Kellie, an EBMS employee, discussed the need for evidence of prior coverage from Trudy to eliminate the pre-existing conditions limitations waiting period.

In the weeks and months before the surgery, Trudy had three separate conversations with Kellie at EBMS concerning the pre-existing conditions limitation, HIPAA, and creditable coverage.  The EBMS records do not reflect the dates of these conversations. Excerpts from the transcripts of those telephone conversation follow:

> Trudy: With this surgery and I just don't know they just should tell me we can wait but it'll just depend on how your body is.
>
> Kellie: Well, I certainly wouldn't want you to . . .
>
> Trudy:  . . . trouble the more I wait. I don't know.
>
> Kellie: Yeah, I certainly wouldn't want you to wait. If you've had coverage, you know, if you've had medical coverage for at least a year prior to you coming on with Doug Andrus, I, you know, I wouldn't even worry, because we take that into consideration and you don't have pre-

---

[11] *Stegelmeier*, 2004 WL 736831 at *8.

[12] *Id.*

existing. You know, I can't guarantee how we're going to pay anything, but the other thing that I would have to do is, once I get a claim, if I don't have that information, then I have to send for records from the doctor and, you know, that takes longer and everything.

. . . .

Kellie: Did you just have the one type of policy?

Trudy: No, I have um, now there's several under that Combined Insurance. There's a hospital, uh, sickness and accident.

Kellie: Right.

Trudy: Uh . . .

Kellie: Well, as long as that's creditable coverage, then, you know, that pertains.

Trudy: Uh huh.

Kellie: I mean, if you just had like a supplemental accident policy or just a life policy or something, that's not the right kind, but if you had a medical plan that is, you know, considered a regular, you know, what you submit your bills to after you go to the doctor, then that's a creditable coverage.[13]

Combined Insurance did not send either Trudy or EBMS information verifying the existence, nature, or time frames of their insurance coverage for Trudy before she had her medical treatment in October 1999.

Trudy's surgery was performed as scheduled, and her hospitalization at St. Mark's Hospital continued through the date of her death, November 4, 1999. The total amount of those medical bills is $144,380.85.

*Denial of the Benefits Claim*

---

[13] Ex. B.

St. Mark's Hospital and other providers for Trudy submitted their bills to EBMS for processing and payment.  On December 16, 1999, EBMS denied payment and sent Explanations of Benefit (EOBs), which stated that pre-existing conditions are not covered.

On March 14, 2000, Stegelmeier wrote to EBMS, requesting reconsideration of the denial of payment.  On April 4, 2000, EBMS wrote to Stegelmeier and upheld its denial of payment based on the pre-existing condition exclusion.

On May 1, 2000, Stegelmeier wrote again to EBMS to appeal the denial. The claim was referred to the Plan Administrator for final decision, and on August 28, 2000, Douglas Andrus responded on behalf of the Plan and upheld the denial based on the pre-existing conditions exclusion in the policy.

In early 2004, this Court remanded the case to the Plan Administrator for reconsideration of the claims and for compliance with ERISA's notice requirements. However, on March 12, 2004, the Plan Administrator again denied the benefits reasoning that the hospitalization and treatment constitute treatment for a pre-existing condition and that Stegelmeier failed to produce evidence of creditable coverage, which could be used to waive the pre-existing conditions limitation.

The March 12, 2004 letter states in pertinent part:

> We have re-reviewed both of those policies, have asked the opinion of our attorneys, and have confirmed that both of the Combined policies are in fact disability policies and do not qualify as creditable coverage. A review of Combined's advertising literature confirms that these policies are marketed as disability policies . . . .[14]

Plaintiff appealed the denial on May 11, 2004. The Plan upheld the denial in a letter dated August 6, 2004, in which the Plan Administrator provided the following reasoning:

---

[14] Ex. A.

[T]here is no question that the first policy is disability insurance and does not constitute creditable coverage. While the second Combined policy . . . provides slightly broader coverage, it too is nothing more than a disability policy . . . [T]he second policy provides benefits in one of five situations (sections A ). In order to obtain benefits under provisions A , the policy provides that the insured be totally disabled and be either hospitalized, in an intensive care unit, or be in a period following a hospital confinement. Section D has a similar requirement of total disability as it provides transportation benefits to an insured only if the insured otherwise qualifies for benefits under Section A (requiring total disability of the insured).

The remaining provision, Section E, similarly requires disability of the insured as a prerequisite to receiving benefits . . . As emphasized in the previous litigation of this matter, this section, like the preceding sections, requires that the insured be disabled as a prerequisite to receiving benefits.

* * *

This conclusion is further substantiated by the nature of the payment itself. Unlike with traditional health insurance policies that pay benefits directly to the medical care provider for specific line item billings, Trudy disability policy provides for direct payment to the insured for the time in which the insured is disabled and unable to work. There is no requirement that the payment actually be applied to the medical care provided.[15]

The Plan Administrator has maintained a denial of the claims.

*Plaintiff's Request for Plan Documents*

Plaintiff's counsel wrote to EBMS on March 5, 2001, as attorney for St. Mark Hospital and for Stegelmeier. Counsel requested copies of all claims submitted to EBMS in 1999, copies of all EOBs sent either to Trudy or to her health care provider for service in 1999, a copy of the Plan document, and a copy of the SPD.  EBMS did not respond in writing to the March 5, 2001 letter.  On March 19, 2001, Plaintiff's counsel wrote again to EBMS regarding the existence of prior creditable coverage and again requested copies of

---

[15] Ex. C.

the Plan document and SPD.  Neither the Plan nor its agent, EBMS, produced a copy of the Plan or SPD documents as requested by Plaintiff's counsel.

In a letter dated April 24, 2001, EBMS responded to Plaintiff's counsel and requested a copy of the Combined insurance policies.  EBMS previously indicated in a telephone call with Plaintiff's counsel that it would not provide copies of any of the requested documents without a release from Stegelmeier, and EBMS reiterated its request in the April 24, 2001 letter.

On July 31, 2001, Plaintiff's counsel sent a letter to EBMS, which included copies of the Combined insurance policies.  The letter, citing applicable authority, also addressed the fact that there was no need for counsel, as attorney for St. Mark's Hospital and Stegelmeier, to produce a release to EBMS in order to receive requested information.

EBMS wrote to Plaintiff's counsel on August 20, 2001, and noted its receipt of the July 31, 2001 letter.  However, EBMS failed to produce a copy of the requested documents.  On October 8, 2001, Plaintiff's counsel wrote again to EBMS, discussing the issue of creditable coverage and including copies of the Combined insurance policies. EBMS did not respond in writing to the October 8, 2001 letter from Plaintiff's counsel.

The SPD and the Plan document were provided to Plaintiff's counsel sometime after the March 22, 2002 filing date.

## IV. DISCUSSION AND CONCLUSIONS

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue of material fact and that

the moving party is entitled to a judgment as a matter of law."   When applying this standard, the Court is to "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."[16]   The parties agree that the material facts in this case are undisputed.  Therefore, summary judgment on the outcome of those facts is appropriate.

B. Review of the Benefits Determination Under ERISA

The most important procedural question to be decided is whether this Court will review the adverse determination under the *de novo* or arbitrary and capricious standard.

Plaintiff, relying on *Wilkins v. Mason Tenders*,[17] contends that this Court should review *de novo* the Plan Administrator's decision to deny the claim because the decision involved an interpretation of federal statute, namely §1181(a) and (c) of ERISA.  In *Wilkins*, a retired employee sued his employer's pension fund for failure to publish certain policies regarding entitlement to benefits in the SPD after the plan administrator determined that ERISA did not require the SPD to include the policies.[18]  However, the appeals court held that it would not give deference to the plan administrator's decision because the question was a matter of statutory interpretation subject to *de novo* review.[19]

The issue in *Wilkins* was whether a plan's failure to give notice of certain policies for eligibility in the SPD violated ERISA's statutory requirements for SPDs.  However, in this case, the Court is asked to review a plan administrator's discretionary decision to deny

---

[16] *English v. Colo. Dept of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001).

[17] 445 F.3d 572 (10th Cir. 2006).

[18] *Id.* at 574.

[19] *Id.* at 581.

a claim for benefits, which the *Wilkins* court acknowledges should be reviewed under the arbitrary and capricious standard.[20]

The Tenth Circuit has made clear that where "an administrator's decision is an exercise of the discretion vested in them by the instrument under which they act," this Court reviews the administrator's decision under the arbitrary and capricious standard.[21]

The relevant language of the Plan provides the following:

> [T]he Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provision of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant rights, and to decide questions of Plan interpretation and those of fact relating to the Plan.[22]

It is clear, and neither party disputes, that the Plan expressly vests the Plan Administrator with discretionary authority to make determinations regarding eligibility and to deny a claimant benefits under the Plan.  Furthermore, Plaintiff's reliance on *Wilkins*, has no merit.  The issue in this case is not whether there is a violation of ERISA regulations as in *Wilkins*, but whether the Plan Administrator appropriately interpreted and applied the "creditable coverage" provision of the Plan.

Therefore, because the Plan vests the Plan Administrator with discretionary authority to make determinations regarding eligibility, the Court reviews his decision under the arbitrary and capricious standard.

---

[20] *Id.*

[21] *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)) (emphasis omitted).

[22] Ex. A.

C. The Claim Denial

The Plan provides coverage for medical care subject to a twelve-month pre-existing condition limitation, which can be reduced or eliminated if the insured provides proof of creditable coverage from another health plan.  Without factoring in creditable coverage, Plaintiff's pre-existing condition limitation would end on January 1, 2002.  The procedures at issue took place between October and November 2001.  Therefore, a finding of creditable coverage under the Combined policies is necessary for Plaintiff to receive benefits under the Plan.

Plaintiff contends that the Combined policies qualify as creditable coverage, which would reduce the pre-existing condition limitation so that the Plan would cover the claims, and challenges the Plan Administrator's discretionary finding that the Combined policies are excepted from creditable coverage as disability policies. In support of this contention, Plaintiff makes the following arguments: 1) the exception to creditable coverage for disability is listed under the regulation titled "Special rules relating to group health plans" and, therefore, does not apply to the Combined health plan, which is an individual health plan; 2) EBMS is a third-party administrator of the Plan, and therefore the Plan is bound by the representations EBMS made to Plaintiff that the Plan would not apply the pre-existing condition limitation; 3) section E of the Combined policies contains benefits payable for hospitalization, without ties to disability; and 4) this Court has already determined that the section E benefits are not disability benefits.

In determining whether the administrator's decision is arbitrary and capricious, this Court is limited to the administrative record relied upon by the administrator when the decision was made.[23]

The Tenth Circuit has established the following guidelines for review of an administrator's decision under the arbitrary and capricious standard.

> When reviewing under the arbitrary and capricious standard, "the administrator  decision need not be the only logical one nor even the best one.  It need only be sufficiently supported by facts within his knowledge to counter a claim that it was arbitrary or capricious."  The decision will be upheld unless it "is not grounded on any reasonable basis."  The reviewing court "need only assure that the administrator's decision falls somewhere on a continuum of reasonableness even if on the low end."[24]

Under the arbitrary and capricious standard of review, the Court finds Plaintiff's arguments insufficient to overturn the Plan Administrator's adverse determination.

First, Plaintiff correctly points out that the exception to creditable coverage for disability benefits is listed in §2590.732 governing "group health plans."  However, 29 C.F.R.  2590.701-4(a)(1) and (2), which are general rules relating to creditable coverage, specifically incorporate §2590.732 as an exception to creditable coverage in general. Bereft of any other section to preclude its application, it is clear that the disability exception listed in §2590.732 applies to the Combined policies.

Next, Plaintiff fails to prove that the representations made by EBMS are a guarantee of benefits or otherwise preclude application of the pre-existing condition limitation under the Plan.  On the contrary, the undisputed facts show that, among the responsibilities listed

---

[23] *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (citing *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380-81 (10th Cir. 1992)).

[24] *Id.* (citations omitted).

in the Service Agreement, EBMS was to respond to inquiries from Plan Members concerning benefits of the Plan; however, the service agreement with EBMS provides that "such information shall not constitute a determination of benefits that will be paid under the Plan nor a guarantee or certification to anyone that any amount will be paid."   In addition, communications from EBMS to Plaintiff's wife and her doctor stated that pre-authorization was not a guarantee of benefits and that payment was contingent upon a determination of creditable coverage.

Finally, it is true that this Court previously determined that section E of the Combined policies is not a disability benefit.   However, this Court did not make a determination of the Combined policies as a whole, but left determination of creditable coverage to the Plan Administrator on remand.[25]

On remand, the Plan Administrator denied the claims on the ground that the Combined policies are disability policies, which do not qualify as creditable coverage.  The Plan Administrator further reasoned that section E of the policy in question "requires the insured be disabled as a prerequisite to receiving benefits,"[26] making section E a disability benefit.  In making the determination, the Plan Administrator reviewed the two Combined policies and literature advertising the policies and sought the opinion of legal counsel.  The Plan Administrator also noted that the method of payments made under the Combined policies does not resemble "traditional health insurance policies that pay benefits directly to the medical care provider."

---

[25] *Id.* "Where part of the coverage under section E of one of the Combined policies is not clearly a disability policy, the issue of proof of creditable coverage is more properly addressed by the Claims Adjuster and the Plan Administrator on remand."

[26] Docket No. 51-B at 5.

Review of the two Combined policies reveals that all three sections in the first policy and three of the five sections in the second policy (sections A, B, and C) provide coverage only when the claimant is disabled.  Section D of the second policy provides a transportation benefit only if a benefit is payable under Section A, and is therefore contingent upon the payment of a disability benefit.  Section E of the second policy, the only section where payment is not directly tied to disability, provides a small benefit in the amount of $200.00 for each period of hospital confinement for a covered sickness.  The policy places a further constraint on the section E payment by stipulating that successive periods of hospital confinement for the same sickness will be considered a single confinement unless separated by more than 30 days.  As a result, only $200 of the $5,531.00 Combined policy payment made to Plaintiff was paid for under Section E.  In addition, unlike the other sections, which are labeled as a "benefit" or an "indemnity," Section E is labeled as an "Additional Hospital Expense."  Given these facts, coupled with the Plan Administrator's review of the record and the direct payment of benefits to Plaintiff rather than to the medical care provider, the Plan Administrator's determination that the Combined policies are disability benefits clearly falls within the continuum of reasonableness necessary to counter the assertion that the determination was arbitrary and capricious.

D.   Violation of §1024(b)(4) for EBMS' Failure to Furnish Plan Documents

Plaintiff seeks summary judgment on his claim for statutory penalties alleging that EBMS failed to furnish the requested SPD and Plan document as mandated under 29 U.S.C. §1024(b)(4).  Defendants contend that a statutory penalty would be inappropriate because the requests for the documents were not timely, the requested documents were

routinely provided to Plan beneficiaries when they signed onto the Plan and readily available at Plaintiff's place of employment, EBMS withheld the documents in good faith, and delay in producing the documents did not result in prejudice to Plaintiff.

Under §1024(b)(4), the Plan Administrator must provide a copy of the SPD and the Plan document within thirty days upon written request from a participant or beneficiary.[27] In applying the statute, the Tenth Circuit noted, "the statute, by its plain meaning, appears to require production of the plan documents when a valid request is made, regardless of whether some time in the past the participant may have received information about the plan."[28]  The Tenth Circuit has also noted that "[a] letter may be a sufficient written request even if not sent directly to the plan administrator."[29]

This Court has already held that the Plan Administrator, Heber Andrus, can be liable for the actions of the third-party administrator, EBMS.[30]  Between March 5, 2001 and July 31, 2001, Plaintiff made three separate written requests to EBMS for the SPD and Plan documents, and each time EBMS failed to furnish the documents.  Thus, Plaintiff is correct that Defendants are liable for EBMS' failure to comply with the statute.  Furthermore, under the plain meaning of the statute, the fact that the requested documents were routinely provided to beneficiaries at sign-on or readily available at Plaintiff's place of employment is inconsequential.

---

[27] 29 U.S.C. §1132(c)(1) (2006).

[28] *Moothart v. Bell*, 21 F.3d 1499, 1504 n.4 (10th Cir. 1994).

[29] *Boone v. Leavenworth Anesthesia, Inc.*, 20 F.3d 1108, 1110 n.2 (10th Cir. 1994).

[30] *Stegelmeier*, 2004 WL 736831 at *28 (citing *Wilcott v. Matlock*, 64 F.3d 1480 (10th Cir. 1994)).

Notwithstanding a violation of §1024(b)(4), this Court has discretion to impose a penalty[31] not in excess of $110 a day.[32]  In exercising discretion, this Court may consider such factors as prejudice and injury to Plaintiff[33] or bad faith on the part of the Defendant.[34]

The SPD and Plan documents were provided to Plaintiff once litigation started, and Plaintiff had the documents when the case was remanded to the Plan Administrator for redetermination of the claims.  However, the Plan Administrator denied the claims on remand, and Plaintiff has not shown that the delay either significantly injured or caused prejudice to him.

While lack of prejudice or injury caused by the delay mitigates the need for a penalty, this factor is offset by the fact that, as noted, EBMS failed to comply with three separate written requests for the SPD and Plan documents.  Defendants contend EBMS acted in good faith by demanding a release from Plaintiff before furnishing the documents to Plaintiff's attorney.  However, Plaintiff's  attorney, citing applicable case law,[35] pointed out in his third written request that a release was not necessary for him to obtain the documents.  Furthermore, EBMS could have verified the need for a release before

---

[31] 29 U.S.C. § 1132(c)(1) (2006).

[32] 29 C.F.R.  2575.502c-1 (2006) (applies to violations occurring after July 29, 1997).

[33] *Moothart*, 21 F.3d at 1506 (citing *Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d  580, 588 (1st Cir. 1993)).

[34] *Rodriguez-Abreu*, 986 F.2d at 588.

[35] Plaintiff's attorney cites to *Moothart*, 21 F.3d at 1506, which holds that "[a]n attorney . . . is entitled to request Plan information on behalf of the participants if the request is clear and puts the administrator on notice of the information sought."

furnishing the documents to Plaintiff's attorney, but instead chose to ignore any explanation for why a release was not needed.

Because Defendants failed to comply with three separate requests for Plan documents and failed to provide a good faith explanation regarding why EBMS disregarded the requests, this Court will impose a penalty against Defendants for violation of §1024(b)(4) in the amount of $50 a day.  Defendant's liability will begin on April 5, 2001— the 31st day after the first request and will end on March 22, 2002—the day Plaintiff accepts as the cut-off for liability—for a total of 351 days.   Therefore, this Court imposes a penalty against Defendants in the amount of $17,550.00.

E.   Prejudgment Interest and Attorney Fees

Plaintiff seeks prejudgment interest on the benefits claim.  Plaintiff also seeks an opportunity to present evidence and arguments in support of an award of attorney fees contingent on the Court granting Plaintiff's Motion on the benefits claim.

In ERISA cases, "prejudgment interest is generally available to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment."[36]

Because this Court will deny Plaintiff's motion on the benefits claim, this Court will axiomatically deny Plaintiff's motion as to the prejudgment interest and attorney fees.

V. ORDER AND CONCLUSIONS

Based upon the foregoing, it is therefore

---

[36] *Caldwell v. Life Ins. Co. of North America*, 287 F.3d 1276, 1286 (10th Cir. 2002) (quoting *Anixter v. Home-Stake Prod. Co.*, 977 F.2d 1549, 1554 (10th Cir. 1992)).

ORDERED that Plaintiff's Renewed Motion for Summary Judgment (Docket No. 51) is DENIED in part but GRANTED as to the statutory penalty.  A penalty is imposed against Defendant Heber Andrus pursuant to 29 U.S.C. §1332(c)(1) in the amount of $17,550.00, to be awarded to Plaintiff.  It is further

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 53) is GRANTED and Defendants are entitled to judgment upholding the Plan Administrator's denial of benefits.  It is further

ORDERED that Plaintiff's request for prejudgment interest and attorney fees is DENIED.

DATED  the 5th day of March, 2007.


BY THE COURT:


_____
TED STEWART
United States District Judge